UNITED STATES *v.* POST FISH CO. (NOS. 1167 AND 1212).[1]

FISH FROM THE CANADIAN WATERS OF LAKE ERIE.

In all essentials the equipment put in place by the importer in the Canadian waters of Lake Erie, or put in place by the importers' orders, constituted an American fishery, and all the fish there taken were the sole property of the importer and the products of an American fishery. There was no requirement of law as to the showing necessary to be made to entitle these fish to free entry other than that they should be the products of American fisheries. This showing could be made before the board after protest had been filed in due form and in due time.

United States Court of Customs Appeals, February 5, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7449 (T. D. 33279), Abstract 32984 (T. D. 33594).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General, for the United States.
*W. E. Guerin, jr.*, for appellees.

---

[1] Reported in T. D. 34188 (26 Treas. Dec., 261).

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In this case fresh fish brought into the port of Sandusky, Ohio, by the Post Fish Co. were assessed for duty at one-fourth of 1 cent per pound as fresh-water fish not provided for under paragraph 271 of the tariff act of 1909, which paragraph reads as follows:

271. Fresh-water fish not specially provided for in this section, one-fourth of one cent per pound.

The importer protested that the fish were the product of an American fishery and that therefore they were entitled to free entry under the provisions of paragraphs 567 and 639 of the free list of the tariff act of 1909, which free list in part reads as follows:

FREE LIST.

That on and after the passage of this act, * * * the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty:

*         *         *         *         *         *         *

567. Fish, fresh, frozen, or packed in ice, caught in the Great Lakes or other fresh waters by citizens of the United States, and all other fish, the products of American fisheries.

*         *         *         *         *         *         *

639. * * * Spermaceti, whale, and other fish oils of American fisheries, and all fish and other products of such fisheries; * * *.

Two series of protests were submitted to the board for determination, and the board sustained all the protests of both series. The Government appealed. The two cases based on the two sets of protests are known in this court as suits 1167 and 1212. The record of suit 1167 constitutes a part of the record made up on the hearing of the protests involved in suit 1212, but the facts presented in both cases are substantially the same, with the exception that the affidavits required by Treasury regulations, filed in one case, were not filed in the other.

From the testimony produced at the hearing by the importers it appears that the Post Fish Co. is a corporation organized and existing under the laws of the State of Ohio. The corporation is engaged in the business of catching fish off Pelee Point, in t1e Canadian waters of Lake Erie, which business has been pursued continuously by the corporation and its American predecessors in interest for a period of some 30 years. The company, or J. W. Post acting for it, furnishes and owns the stakes, nets, fishing tackle, and all necessary equipment for the taking and catching of fish. The concern has established four fisheries on the east side of Pelee Point and three on the west side, by driving stakes into the bed of the lake and attaching to them nets set up in strings or rows and equipped with pounds for trapping fish. The men who drive the stakes, hang the nets, and have charge of the several strings or rows of nets and their corresponding pounds are employed by the company and are charged with the duty of lifting

the fish from the nets and delivering them to the company's steamer, the *Louise*. With the exception of one man, who owns his boat, the men in charge of the nets are furnished by the company with motor boats and are thus enabled to visit the nets.

The motor boats receive the fish as they are lifted from the pounds and deliver them on board the *Louise*, where they are sorted and placed in boxes without segregating the catch of one fisherman from that of another. Fish caught by the Americans Waedel and Grathwohl were kept in separate packages and landed in that condition at Sandusky. As compensation for their services the employees of the company receive either a certain rate per pound or a percentage of the value of the fish caught and delivered, and at their own expense may hire, and do hire, other men to aid them in their work. The employees of the company are charged with responsibility for all property confided to their care, and are bound to return it to the company in as good condition as that in which it was received by them, but they do not rent it in the sense that they pay anything for its use. The employees in charge of the nets are subject to the directions of the captain of the *Louise*, and the fish are left in the nets or lifted therefrom, as he may order. Unless prevented by weather or other contingency the *Louise* calls at the nets every day except Sunday, and taking on board such fish as may have been lifted carries them to Sandusky for entry at the customhouse. This state of facts, which was met by the Government by no competent evidence to the contrary, warranted, we think, a finding that the stakes, nets, pounds, fishing gear, tackle, and other essentials for the taking of fish established by the Post Fish Co. on both sides of Pelee Point were either wholly the property of the Post Fish Co. an American corporation, or property to the use of which the company was entitled, and which was completely subject to its orders, directions, control, and management. From this it follows, under the decided cases, that in all essentials the entire equipment put in place at Pelee Point by the importer or by its orders constituted an American fishery, and that all fish taken by it were the sole property of the Post Fish Co. and the products of an American fishery. T. D. 3131, T. D. 7933, T. D. 24738, T. D. 28768; Lake Ontario Fish Co. *v.* United States (99 Fed., 551–552); United States *v.* Reading (1 Ct. Cust. Appls., 515; T. D. 31534).

The suggestion that the tariff status of fish taken by American fisheries on the Great Lakes should be determined by a different rule from that governing the tariff status of fish caught by American fisheries in salt water does not appeal to us. Possibly the tariff act of 1897 exacted for the free entry of fresh-water fish taken by American fisheries compliance with a condition not required of American salt-water fisheries, but if it did both classes of fisheries, equally

entitled to the favor of the Government, were placed on the same footing by the tariff act of 1909.

Paragraph 555 of the act of 1897 provided for the free entry of—

Fish, fresh, frozen, or packed in ice, caught in the Great Lakes or other fresh waters by citizens of the United States.

That paragraph as it stood was open to the interpretation that only those fish in the catching of which none but American citizens had any intervention were entitled to free admission, and that consequently fish taken by American owned nets, boats, gear, tackle, and equipment—that is to say, by American fisheries—would be excluded from its operation if any but American citizens were employed in making the catch. (Lake Ontario Fish Co. *v.* United States, *supra.*) A provision so worded and interpreted was clearly to the disadvantage of American fresh-water fisheries, apparently without any compensating return, and that the provision was extended by paragraph 567 of the act of 1909 so as to cover "other" fish than those caught by American citizens evidenced, we think, an intention on the part of Congress to relieve American concerns fishing in the Great Lakes from the obligation of verifying the citizenship of every fisherman employed by them and to give to the products of their enterprise the same advantage as that accorded to fish caught by American citizens possibly neither the owners of a fishery nor engaged in fishing as a business.

The point made by the Government that fish caught by Fred Waedel and William Grathwohl are not entitled to admission free of duty because the boats used in making the catch were hired by them from the owners, Post and Grubb, is not well taken. Fred Waedel and William Grathwohl were both American citizens, and the fish taken by them, which are the subject of protest in suit 1212, if they were not fish caught by the Post Fish Co., an American fishery, were either fish caught by American citizens or fish caught by a fishery of which Fred Waedel and William Grathwohl were the owners, and in either or any of the events they were fish entitled to free entry. It was further claimed by the Government that the entries involved in suit 1167 were not accompanied by the affidavits required by Circular No. 4, issued by the Secretary of the Treasury on January 10, 1912 (T. D. 32138), and that therefore all protests directed to the classification of fish covered by such entries should be overruled for failure to comply with the Treasury regulations. When the fishing season began in April, 1912, the importer presented its entry, accompanied by the affidavits required by the regulations, but was notified by the collector himself that he (the collector) was satisfied that the fish were dutiable and that therefore the affidavits need not be filed. In accordance with this statement of the collector no affidavits were filed with the entries involved in suit 1167, and all

fish covered by such entries were held to be dutiable not because no affidavits were presented with the entries, but apparently on the theory that they were either not taken by American citizens or by an American fishery, or if taken by an American fishery that such fish were not entitled to free entry as "all other fish, the products of American fisheries."

The affidavits prescribed by Circular No. 4 for the free entry of the products of American fisheries were clearly designed for no other purpose than that of furnishing the collector with sufficient information to justify a determination on his part that the importation was within the terms of the free list and therefore entitled to admission free of duty. The collector having satisfied himself from other sources of information that the merchandise was dutiable and not free of duty, and having virtually declared that the affidavits if presented would not change his mind on that subject, it would have been a useless formality to present them, and their presentation must be regarded as waived. But apart from all that, the regulation in question was purely administrative and compliance with it as a condition precedent to the free entry of the fish was not required by the statute. Had the statute prescribed that the nature and character of the importation was to be determined by certain affidavits filed at the time of entry, or had the free entry of the products of American fisheries been conditioned by law on the presentation of such affidavits when entry was made, the goods might very properly be finally denied the favor of the free list. The act under which the importation in controversy was entered prescribed no condition, however, for its free entry other than that it should be fish the products of American fisheries, and proof that they were such products might properly be made before the board after protest filed in due form and time. United States v. Morris European & American Express Co. (3 Ct. Cust. Appls., 146–147; T. D. 32386).

The decisions of the Board of General Appraisers in suits 1167 and 1212 are *affirmed*.